IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


STEVE SILVA,

        Petitioner,

v.                                                            CIV 99-1405 JC/KBM

JOE WILLIAMS, Warden, and
PATRICIA A. MADRID, Attorney General,

        Respondents.


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

      This matter is before the Court on the petition by Steve Silva for a Writ of Habeas Corpus Pursuant To 28 U.S.C. § 2254 By A Person In State Custody *(Doc. 1),* and Respondents' Answer and Motion To Dismiss Petition With Prejudice *(Docs. 9, 10).* Because it is possible to resolve the issues on the pleadings and materials submitted for the record, I find that an evidentiary hearing is not necessary. *E.g., Trice v. Ward,* 196 F.3d 1151, 1159 (10th Cir. 1999), *petition for cert. filed 5/10/00;* Rule 8(a), *Rules Governing Habeas Corpus Under Section 2254.* Having considered the arguments, record, and relevant law, I find that the petition is without merit.

### I. Procedural Background

      Petitioner was charged with murdering his stepson and tampering with evidence by concealing the gun after the shooting. A jury found him guilty of the lesser offense of voluntary manslaughter and also of evidence tampering. The jury specifically found "unanimously . . . beyond a reasonable doubt that a firearm was used in the commission of Voluntary

Manslaughter." *Answer, Exh. C; see also Exhs A, B, E, G-H.*[1]

On March 15, 1999, the trial judge enhanced the six-year sentence for voluntary manslaughter by a total of three years under two different statutes. First, based upon the jury's firearm finding, he enhanced the sentence by one year pursuant to NMSA 31-18-16(A) ("firearm enhancement statute").[2] *Exh. 1.* Second, the court made two factual findings said to constitute aggravating factors: (1) Silva "armed himself and then voluntarily put himself in a situation with the victim in which provocation and violence could occur;" and (2) Silva "who was the victim's stepfather, drove away after the shooting, leaving the victim suffering from a gunshot wound with only strangers to help him with his injury."[3] *Id.* Therefore, the trial judge further enhanced the sentence by two years pursuant to NMSA 31-18-15.1(A) ("aggravating factors enhancement statute').

Although notices of appeal were filed by defense counsel and by Petitioner *pro se,* "upon the advisement of counsel" no direct appeal was pursued. *Doc 1 at 2; see also Exhs D, F.* Instead, both counsel and Petitioner proceeding *pro se* pursued motions to reconsider in the trial

---

[1] Unless otherwise noted, all references to Exhibits are those attached to Respondents' Answer.

[2] The statute provides in relevant part that "[w]hen a separate finding of fact by the court or jury shows that a firearm was used in the commission of a noncapital felony, the basic sentence of imprisonment prescribed for the offense in [NMSA 31-18-15] shall be increased by one year."

[3] The statute permits a court to "alter the basic sentence as prescribed in [NMSA 31-18-15] upon a finding by the judge of any mitigating or aggravating circumstances surrounding the offense or concerning the offender." NMSA 31-18-15.1(A). The only two factors a judge is statutorily prohibited from considering as aggravating under this section are "use of a firearm or prior felony convictions." NMSA 31-18-15.1(B). The judge determines the "amount of the alteration of the basic sentence for noncapital felonies [but cannot give an enhancement that exceeds] one-third of the basic sentence." NMSA 31-18-15.1(C).

court.  Only one issue raised by counsel is relevant for these habeas proceedings – an alleged violation of *Caristo v. Sullivan,* 112 N.M. 623 (1991).  Counsel argued that although the prosecution gave notice of its intent to seek and enhancement, it did not supply the defense with the specific circumstances on which it would rely.  *See Exhs. E, H-K.*  The trial court denied both motions for reconsideration.

Soon thereafter and proceeding *pro se,* Petitioner sought a writ of habeas corpus in state post-conviction proceedings.   He again raised the *Caristo* argument and added a new "double jeopardy" claim.  Silva argued that the trial court used same "firearm" factor to enhance his sentence under both the "firearm" and "aggravating circumstances" enhancement statutes.  Silva contended that under *State v. Haddenham,* 110 N.M. 149 (N.M. Ct. App.), *cert. denied,* 110 N.M. 183 (N.M. 1990), a multiple use of the firearm factor to enhance the sentence violates double jeopardy.  *Exh. L.*  Two days after the petition was filed, the trial judge discussed and denied the *Caristo* claim on the same grounds as before.  He denied the writ without discussing the double jeopardy claim mistakenly noting that Silva failed "to bring any new issues before the Court."  *Exh. M.*

Silva petitioned the New Mexico Supreme Court for a writ of certiorari.  *Exh. N.*  After granting itself two extensions, the court originally summarily denied the writ without explanation on October 27, 1999.  *Exhs. O-Q.*  Petitioner then filed his federal habeas action in this Court on December 3, 1999, raising the *Caristo* and double jeopardy issues.  As such, the Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"], applies to this case.  *E.g., Paxton v. Ward,* 199 F.3d 1197, 1204 (10th Cir. 1999).

Just days after Petitioner filed here, the New Mexico Supreme Court *sua sponte*

reconsidered, withdrew its October 27th dismissal and ordered the State to file a response. *Exhs. O-S.* The State argued that all of the issues were procedurally defaulted because no direct appeal was taken and, in the alternative, that the two claims were without merit. *Ex. T.* In a one-sentence order dated December 13, 1999, the New Mexico Supreme Court denied certiorari stating that it had "considered said petition" and was "sufficiently advised." *Ex. U.*

In the present case, Respondents filed an Answer as ordered along with a Motion To Dismiss Petition With Prejudice. They concede exhaustion, but maintain that Petitioner's claims are procedurally defaulted, or only raise state law issues, or were correctly decided and entitled to deference under AEDPA, or are without merit. *Docs. 9-10.*

## II.  Analysis

### A.  Procedural Default

A federal habeas petitioner must exhaust state remedies by presenting each of his claims to the state courts. If the state courts decline to review the claims on the merits because of a procedural default, and if that procedural default constitutes an "independent and adequate" state ground, the federal habeas court can only review the claims if petitioner shows either cause and prejudice or a fundamental miscarriage of justice. But procedural default principles simply do not apply where, as here, there is no state decision that "clearly and expressly" relied on a procedural default in denying Silva's claims. *Harris v. Reed,* 489 U.S. 255, 263 (1989); *Coleman v. Thompson,* 501 U.S. 722, 735 (1991); *see also e.g., Thomas v. Gibson,* 218 F.3d 1213 (10th Cir. 2000) (procedural default in post-AEDPA case); *Tillman v. Cook,* 215 F.3d 1116, 1128 (10th Cir. 2000). The New Mexico Supreme Court decision did not rely on a procedural bar – it is a form order that is ambiguous at best. The order did not rely on the State's brief, and even if it had

4

incorporated or mentioned the "reasons" cited in that brief, the State had argued in the alternative.

Although a federal habeas court can go behind a summary disposition from the last state court presented with the claim and apply an earlier reasoned decision finding procedural default, here the trial judge did not address the double jeopardy claim at all. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803-804 (1991); *see also Jackson v. Shanks,* 143 F.3d 1313, 1319 (10th Cir.) ("We are not inclined to rely on a state procedural rule that the New Mexico courts did not rely upon."), *cert. denied,* 525 U.S. 950 (1998). If a state court decision does not invoke a procedural bar, this Court cannot make the *post hoc* determination that an exhausted claim should have been denied on procedural grounds. *See Church v. Sullivan,* 942 F.2d 1501, 1507 (10th Cir. 1991). I find, therefore, that this case presents no procedural default bar to federal habeas review.

### B. Presentation Of Federal Constitutional Claims

Respondents argue that Petitioner "fails to state a federal constitutional claim" because his "two claims are matters of state law and are governed by New Mexico precedent." *Doc. 10, ¶ 5.* True, state law errors alone are not grounds for federal habeas relief. Nevertheless, a federal habeas court can grant relief if errors of state law so infected the proceedings as to render them "fundamentally unfair" in violation of due process. *See, e.g., Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); *Jones v. Gibson,* 206 F.3d 946, 959 (10th Cir. 2000). To satisfy the comity purposes underlying the exhaustion requirement, a federal habeas petitioner must "fairly present" the state courts with his federal constitutional claims so that they have the opportunity to address them and correct alleged violations.[4] That does not mean that *pro se* litigants must invoke

---

[4] It is not clear whether Respondents are trying to invoke an *Estelle*-type rule as a total bar or whether they are making a fair presentation argument despite their concession with respect to exhaustion.

"talismanic language" or cite "book and verse on the federal constitution"– the inquiry is whether the claim was presented in a manner sufficient to put the state court on notice of a federal constitutional claim.  *See, e.g., Duncan v. Henry,* 513 U.S. 364, 365-366 (1995); *Picard v. Connor,* 404 U.S. 270,  278 (1971); *Nichols v. Sullivan,* 867 F.2d 1250, 1252 (10th Cir.), *cert. denied,* 490 U.S. 1112 (1989).

Silva's arguments that "due process" and "double jeopardy" had been violated, when coupled with the cases on which he relied, were sufficient to put the state courts on notice of federal claims.  In *Caristo*, the public defender argued that NMSA § 31-18-15.1 "was unconstitutional for failing to include a notice requirement."  We are not told whether the issue in *Caristo* was raised as a federal or state claim, or both, and the decision only cites state cases.  Yet, the due process principles expressed in *Caristo* are the same as federal due process standards, and the cases it relies on cite to federal due process decisions.[5]  Under these circumstances, I find that the two claims were fairly presented as federal constitutional claims.

---

[5] For example, *Caristo* found that *State v. Rhodes,* 76 N.M. 177 (1966) announced a fundamental principle that fairness requires notice and an opportunity to be heard before an increased penalty is imposed.  *Rhodes* cites a Supreme Court case for this proposition.  *Id.* at 180, citing *Oyler v. Boles,* 368 U.S. 448 (1962) ("a defendant must receive reasonable notice and an opportunity to be heard relative to the recidivist charge even if due process does not require that notice be given prior to the trial on the substantive offense").  Similarly, the *Haddenham* case relied upon by Silva in his state habeas proceeding cites both state and federal double jeopardy decisions.  110 N.M. at 153.

### C. *Caristo* Claim

The trial judge applied the *Caristo* holding to Petitioner's case: where the facts relied on for the enhancement were established at trial, a criminal defendant has already had notice and an opportunity to respond to them. Federal due process standards do not hold otherwise; they likewise require reasonable notice and an opportunity to be heard on the issues that will be used to enhance a sentence. When the enhancement issues are not independent of facts adduced at trial, due process is satisfied because notice and opportunity were already afforded.[6]

The trial judge found as a matter of fact that the defense received notice of the State's intent to pursue an enhancement generally "well in advance" of the sentencing hearing, and that the two factors upon which he relied in enhancing Silva's conviction were based on testimony presented at trial. *Exh. H.* Neither in the state courts or here does Petitioner argue that the facts are otherwise. 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct"). Having been afforded all the process due him, I find Petitioner's claim without merit.

### D. Double Jeopardy

As a federal constitutional matter, the Double Jeopardy clause historically is found "inapplicable to sentencing proceedings . . . because the determinations at issue do not place a defendant in jeopardy for an 'offense.'" *Monge v. California,* 524 U.S. 721, 728 (1998).

---

[6] *See Specht v. Patterson,* 386 U.S. 605, 610 (1967) (due process "requires that [a defendant] be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own. And there must be findings adequate to make meaningful any appeal that is allowed"); *Benavidez v. Baker,* 399 F.2d 591, 593 (10th Cir. 1968) (New Mexico habitual criminal statute; finding notice just prior to sentencing did not violate due process because it was "cured by [counsel's] actual knowledge that the recidivist statute was applicable").

Sentence enhancements in particular are not "construed as additional punishment for the previous offense; rather, they act to increase a sentence 'because of the manner in which [the defendant] committed the crime of conviction.'" *Id.* It is precisely this "particular circumstances" vs. "offense" distinction made by the trial judge in Silva's case. It is the distinction likewise required under New Mexico law.[7]

According to the interlineation in the judgment, Silva was convicted of voluntary manslaughter under NMSA § 30-2-3, which provides that "manslaughter is the unlawful killing of a human being without malice." Voluntary manslaughter, a third-degree felony, consists of "manslaughter committed upon a sudden quarrel or in the heat of passion." *Id.* As explained in New Mexico's Uniform Jury Instructions, voluntary manslaughter requires that a finding of "sufficient provocation." On the other hand, an element of second-degree murder is "the absence of sufficient provocation." Both require showing the victim was killed and that the perpetrator knew his act, such as shooting a gun, created a strong probability of death or great bodily harm to the victim. *See UJI 14-210, 14-220.*

The trial judge found Silva "armed himself and then voluntarily put himself in a situation with the victim in which provocation and violence could occur." In other words, the trial judge found that while Silva may have been provoked, he did not just stumble unwittingly into the

---

[7] *See State v. Tortolito,* 124 N.M. 368, 374 (N.M. Ct. App.) (reliance on circumstances that form the basis of the elements of the offense to aggravate put defendant provided notice to satisfy due process and did not violate double jeopardy), *cert. denied,* 124 N.M. 311 (N.M. 1997); *State v. Wilson,* 97 N.M. 534, 538 (N.M. Ct. App.) (a trial court cannot rely on an element of the crime in finding an aggravating factor but it can rely on the "circumstances surrounding the offense" and should take care to articulate its findings with precision), *cert. denied,* 98 N.M. 50 (N.M. 1982). *Compare Haddenham,* 110 N.M. at 153 (finding double jeopardy violation to use same fact to sentence defendant under felon in possession of firearm statute as was used to enhance under the habitual offender statute).

situation where that occurred.  Rather, Silva voluntarily created the incendiary situation that led to the provocation.  The trial judge also found that the aggravating factors on which he relied "were not elements of the underlying offenses," and instead were "facts which were used to establish elements of the underlying offenses." *Exh. H.*

It is apparent from the discussion above that the court applied circumstances underlying an element of the offense for the aggravating factors enhancement.  If trial judge's findings are of fact, then I find that they are unrebutted by Petitioner under 28 U.S.C. § 2255(e)(1).  In any event, the facts of this case do not give rise to a situation where the federal double jeopardy clause would be implicated.  Therefore, I find that this claim is likewise without merit.

Wherefore,

**IT IS HEREBY RECOMMENDED THAT:**

1. The petition be denied;

2. Respondents' Motion to Dismiss be granted *(Doc. 10)*; and

3. This action be dismissed with prejudice.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the ten day period  if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE